UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


ANTHONY E. FISHER,

      Plaintiff,

    v.                                CASE NO. 3:21-CV-00799-MAP

COMMISSIONER OF SOCIAL SECURITY,

      Defendant.

_____/

**<u>ORDER</u>**

This is an appeal of the administrative denial of disability insurance benefits (DIB) and period of disability benefits.[1]  *See* 42 U.S.C. § 405(g).  Plaintiff argues the administrative law judge (ALJ) erred in assessing his residual functional capacity ("RFC"); by failing to resolve an apparent conflict between the vocational expert's ("VE") testimony and the Dictionary of Occupational Titles ("DOT"); and by failing to properly consider his V.A. service-connected disability rating.  After considering the parties' arguments (docs. 14, 17, and 20) and the administrative record (Doc. 10), I find the Commissioner's decision is supported by substantial evidence.  I affirm.

     I.     *Background*

Plaintiff Anthony E. Fisher, 51 years old at his administrative hearing on March 4, 2021, alleges a disability onset date of August 31, 2018, due to post-traumatic stress disorder (PTSD), anxiety, depression, sleep apnea, degenerative arthritis in hands and back, lower back strain, degenerative disc disease, left knee arthritis, sinusitis, and service-connected

---

[1] The parties have consented to my jurisdiction.  *See* 28 U.S.C. § 636(c).

narcolepsy (Tr. 266). After serving as an Apache Helicopter Pilot in the United States Army from January 1996 through November 2007, Plaintiff worked as a registered nurse from January 2012 through August 2018 (Tr. 267). His education includes a bachelor's degree earned prior to his Army service and a master's degree in nursing in 2016 (Tr. 267, 596). Plaintiff worked as a nursing instructor at Jacksonville University for three years (Tr. 596). Plaintiff is married and lives with his wife; together they have four adult children (Tr. 294, 694). Plaintiff's date of last insured (DLI) is December 31, 2023; he must show he became disabled by this date to receive benefits.

Plaintiff stopped working in 2018; he reports that he got agitated with students and it was too stressful to continue working (Tr. 694). Plaintiff describes his PTSD as severe. He experiences flashbacks and nightmares (Tr. 282). Unfortunately, Plaintiff's paranoia worsened after his nineteen-year-old son's murder in 2017 (Tr. 595, 779). Plaintiff feels that someone is out to "get him" (Tr. 306, 779). Specifically, he is fearful that the Taliban may send people to kill his family like he murdered theirs in Iraq (Tr. 281). In addition to his mental limitations, Plaintiff reports severe pain radiating from his lower back through his left leg. He describes the pain as a 9-10 on a scale of ten and says that his pain is exacerbated by climbing stairs, standing for greater than thirty minutes, and walking further than ¼ of a mile (Tr. 292).

After a hearing, the ALJ found Plaintiff suffers from the severe impairments of degenerative disc disease, osteoarthritis, obesity, PTSD, anxiety, and depression (Tr. 79). Despite these impairments, the ALJ found Plaintiff maintains the residual functional capacity (RFC) to perform light work with the following limitations:

> occasional postural activities (climb/balance, stoop, kneel, crouch, and crawl); no more than frequent handling; no concentrated exposure to vibrations, work

around moving mechanical parts, or work at unprotected heights.  He is further limited to performing work which needs little or no judgment to do simple duties that can be learned on the job in a short time (up to and including 30 days). He is able to deal with the changes in a routine work setting to relate adequately to Supervisors with occasional Coworker but can have no General Public contact.

(Tr. 82).  After consulting a vocational expert (VE), the ALJ found that with this RFC, Plaintiff could not return to his past relevant work (Tr. 87).  However, the ALJ found that "[c]onsidering the claimant's age, education, work experience, and [RFC], there are jobs that exist in significant numbers in the national economy that the claimant can perform." (Tr. 87). Specifically, the ALJ opined that Plaintiff can perform the jobs of retail marker, DOT 209.587-034; router, DOT 222.587-038; and photocopy machine operator, DOT 207.685-014 (Tr. 88).

Plaintiff appealed the ALJ's decision to the Appeals Council (AC), which denied review. (Tr. 1).  Plaintiff, his administrative remedies exhausted, appealed to this Court.

II.     *Standard of Review*

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect.  These regulations establish a "sequential evaluation

process" to determine whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920.

If an individual is found disabled at any point in the sequential review, further inquiry

is unnecessary.  20 C.F.R. §§ 404.1520(a), 416.920(a).  Under this process, the ALJ

must determine, in sequence, the following:  whether the claimant is currently engaged

in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one

that significantly limits the ability to perform work-related functions; whether the

severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart

P, Appendix 1; and whether the claimant can perform his or her past relevant work.

20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  If the claimant cannot perform the tasks

required of his or her prior work, step five of the evaluation requires the ALJ to decide

if the claimant can do other work in the national economy in view of his or her age,

education, and work experience.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  A

claimant is entitled to benefits only if unable to perform other work.  *Bowen v. Yuckert*,

482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

A determination by the Commissioner that a claimant is not disabled must be

upheld if it is supported by substantial evidence and comports with applicable legal

standards.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  "Substantial evidence is more than a

scintilla and is such relevant evidence as a reasonable person would accept as adequate

to support a conclusion."  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th

Cir. 2011) (citation and internal quotation marks omitted).  While the court reviews

the Commissioner's decision with deference to the factual findings, no such deference

is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the Commissioner, even if it finds that the evidence preponderates against the Commissioner's decision. *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014); *Winschel*, 631 F.3d at 1178 (citations omitted). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (*per curiam*) (citations omitted).

III.    Discussion

A. ALJ's RFC assessment

Plaintiff asserts the ALJ erred by failing to base his RFC assessment on substantial evidence. A claimant's RFC is the most work he can do despite any limitations caused by his impairments. 20 C.F.R. § 404.1545(a)(1). In formulating a claimant's RFC, the ALJ must consider all impairments and the extent to which the impairments are consistent with medical evidence. 20 C.F.R. § 404.1545(a)(2). This includes both severe and non-severe impairments

when determining if the claimant can "meet the physical, mental, sensory, and other requirements of work."   20 C.F.R. § 404.1545(a)(4).   Ultimately, under the statutory and regulatory scheme, a claimant's RFC is a formulation reserved for the ALJ, who must support his findings with substantial evidence.   *See* 20 C.F.R. § 404.1546(c).

Plaintiff identifies four specific sources of error with regard to his RFC; I will address each separately below.

### 1.   *Non-exertional limitations identified by State Agency psychologists*

First, Plaintiff argues that the ALJ erred by failing to include in the RFC the nonexertional limitations identified by State Agency psychologists, Drs. Julie Bruno and Mercedes DeCubas.   Specifically, Plaintiff suggests the ALJ erred by failing to adopt Drs. Bruno and DeCubas' opinions that he can carry out no more than "simple instructions" and that he can perform only "two step tasks" (Doc 14 at 8).

On her Mental Residual Functional Capacity Assessment, Dr. Bruno rated Plaintiff's limitations on various tasks that require "sustained concentration and persistence" (Tr. 118-119).   Dr. Bruno described Plaintiff as "not significantly limited" in his ability to carry out very short and simple instructions; his ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; his ability to sustain an ordinary routine without special supervision; his ability to work in coordination with or in proximity to others without being distracted by them; his ability to make simple work-related decisions; and his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods (Tr. 118-119).   Dr. Bruno rated Plaintiff's limitations as "moderately" limited in only two areas:   his ability to carry out detailed

instructions; and his ability to maintain attention and concentration for extended periods (Tr. 118).  Supporting her assessment, Dr. Bruno added, "Clmt has MA in Nursing.  No issues with memory or learning.  Clmt can follow instructions and directions. Clmt can engage in two step tasks.  Clmt's adls are grossly intact.  Clmt is capable of semi skilled tasks." (Tr. 119).

At the reconsideration level, Dr. DeCubas noted that there were "no new pscyh records," and that the "alleged severity and limitations are not fully supported by findings in the MER" (Tr. 129).   Dr. DeCubas agreed with Dr. Bruno's assessment that Plaintiff's limitations in the areas of understanding, remembering, or applying information; interacting with others; and adapting or managing oneself were "mild;" and that his limitations in the area of concentrating, persistence, or maintaining pace were "moderate" (Tr. 114, 129). Explaining her assessment that Plaintiff has "moderate" limitations in concentrating, persistence, or maintaining pace, Dr. DeCubas indicated, "the clmt completes tasks started, interacts with others without incidents, makes apts, goes to apts, makes plans and follows through." (Tr. 130).   Dr. DeCubas' Mental Residual Functional Capacity Assessment adopts the same narrative set forth by Dr. Bruno: "Clmt has MA in Nursing.  No issues with memory or learning.  Clmt can follow instructions and directions. Clmt can engage in two step tasks. Clmt's adls are grossly intact.  Clmt is capable of semi skilled tasks." (Tr. 134).

Per the revised regulations, the ALJ will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [claimant's own] medical sources."  20 C.F.R. § 404.1520c(a).   Additionally, in considering one or more medical opinions or prior administrative medical findings from the same medical source, the ALJ is not required to articulate how he considered each opinion or finding.  20 C.F.R. § 404.1520c(b)(1).  In this

case, the ALJ noted that Drs. Bruno and DeCubas were non-examining consultants whose opinions are "supported by contemporaneous evidence but are only partially consistent with the overall medical evidence of record, which supports no greater limitations than those in the residual functional capacity assessed herein" (Tr. 86). As a result, the ALJ concluded that "to the extent [Drs. Bruno and DeCubas' opinions] are consistent with no more than moderate limitations, they are persuasive" (Tr. 86).

Looking at the decision as a whole, I find that the ALJ properly considered Drs. Bruno and DeCubas' opinions. The ALJ discussed Drs. Bruno and DeCubas' opinions when he analyzed Plaintiff's "paragraph B" criteria (Tr. 80-82). The ALJ cited to Drs. Bruno and DeCubas' assessments as well as evidence from treating providers when he reached his conclusion that Plaintiff had moderate limitations in the functional areas of understanding, remembering, or applying information; interacting with others; and adapting or managing oneself. Despite that both state agency psychological consultants characterized Plaintiff's limitations as "no more than mild" in these functional areas (Tr. 80-81), per the regulations, the ALJ was free to reach his own conclusion. *See* 20 C.F.R. § 404.1520c(a). Similarly, the ALJ considered Drs. Bruno and DeCubas' assessments with regard to the area concentrating, persisting, or maintaining pace (Tr. 81). As to this area, the ALJ concluded Plaintiff's limitations were "mild," while the state agency psychological consultants had opined Plaintiff had mild to moderate limitations (Tr. 81; 118-119; 133-134). The ALJ explained that "[g]enerally, the claimant's neurologic, psychiatric, and mental status exams were largely within normal limits (Ex. 1F-3F; 5F; 6F; 8F; 10F)" (Tr. 81). The ALJ further explained, "The consultative examiner opined that the claimant's persistence and pace were varied due to depression and PTSD (Ex. 6F)" (Tr. 81). And noted that, "Furthermore, the state agency

psychological consultants opined that the claimant's limitations in this functional area were no more than moderate" (Tr. 81).

Per the regulations, the ALJ determined Plaintiff's RFC, limiting Plaintiff to "performing work which needs little or no judgment to do simple duties that can be learned on the job in a short time (up to thirty days)." (Tr. 82). The ALJ found Plaintiff "able to deal with changes in a routine work setting and relate adequately to Supervisors with occasional Coworker but can have no General Public contact" (Tr. 82). In assessing Plaintiff's RFC, the ALJ followed the applicable regulations and supported the RFC determination with substantial evidence.

Plaintiff identifies a second error with regard to the ALJ's consideration of Drs. Bruno and DeCubas' opinions. Plaintiff argues that the ALJ erred by labeling Drs. Bruno and DeCubas' opinions "persuasive," yet concluding that Plaintiff's statement about the intensity, persistence, and limiting effects of his symptoms were *inconsistent* with the medical evidence (the opposite conclusion reached by Drs. Bruno and DeCubas). This assertion is meritless. On their state agency assessment forms, Drs. Bruno and DeCubas were asked: "Are the individual's statements about the intensity, persistence, and functionally limiting effects of the symptoms substantiated by the objective medical evidence alone" (Tr. 116, 131). Both responded "yes" and did not elaborate (Tr. 116, 131). Again, Drs. Bruno and DeCubas did not examine Plaintiff, and it is the ALJ who is tasked with reaching the RFC and disability determination. Thus, the ALJ did not err in failing to defer to or adopt Drs. Bruno and DeCubas' statements about the intensity, persistence, and functionally limiting effects of Plaintiff's symptoms. *See* 20 C.F.R. § 404.1520c(a).

At this point in the analysis, I emphasize that, to the extent Plaintiff asks me to re-weigh the evidence or substitute my opinion for that of the ALJ, I cannot. If the ALJ's findings are based on the correct legal standards and are supported by substantial evidence – as they are here – the Commissioner's decision must be affirmed even if I would have reached a different conclusion. *See Bloodsworth*, 703 F.2d at 1239. "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, ___ U.S. ___; 139 S.Ct. 1148, 1154 (2019). In other words, I may not reweigh the evidence or substitute my own judgment for that of the ALJ even if I find the evidence preponderates against the ALJ's decision. *See Bloodsworth*, 703 F.2d at 1239. On this record, the ALJ did not err.

### 2. *Non-exertional limitations identified by Dr. Sandrik*

Similarly, Plaintiff asserts that the ALJ erred by finding consultative examining psychologist Dr. Lauriann Sandrik's opinion "persuasive," "supported by exam findings," and "consistent with the overall medical evidence of record," yet rejecting Dr. Sandrik's non-exertional limitations. Dr. Sandrik, who examined Plaintiff on February 17, 2020, found Plaintiff:

> mentally capable of understanding, remembering, and completing simple instructions, yet his persistence and pace will vary due to symptoms of depression and PTSD. It is believed he would have difficulty completing complex instructions … difficulty interacting with co-workers, supervisors, and the general public. Mr. Fisher appears incapable of adopting to basic routine changes in a workplace setting, traveling alone to a new place, and avoiding hazards. He appears capable of managing funds with assistance.

(Tr. 598). Plaintiff claims the ALJ erred because he only adopted the limitation pertaining to "no general public contact," and failed to adopt Dr. Sandrik's other non-exertional limitations. As set forth above, however, the ALJ need not articulate how he considered each

10

opinion or finding.  *See* 20 C.F.R. § 404.1520c(b)(1).  In concluding that Dr. Sandrik's opinion was "persuasive," the ALJ explained that "[t]he opinion is supported by exam findings and review of prior medical evidence and is consistent with the exam findings and with overall medical evidence of record, which supports no greater limitations than those included in the residual functional capacity assessed herein" (Tr. 86).  The ALJ also noted that "[t]he doctor examined the claimant but did not have the opportunity to review subsequent evidence received at the hearing level." (Tr. 86).  Per the revised regulations, the ALJ will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [claimant's own] medical sources."  20 C.F.R. § 404.1520c(a).  Thus, I find the ALJ followed the applicable regulations and supported his RFC determination with substantial evidence.

### 3.   *Maintaining concentration, persistence, and pace*

Lastly, Plaintiff states the ALJ erred by finding he has only "mild" as opposed to "moderate" limitations regarding his ability to maintain concentration, persistence, or pace. Plaintiff argues that the ALJ contradicted himself and that his decision is "internally inconsistent" (Doc. 10 citing Tr. 81).  Upon review, I find no internal inconsistency.  The ALJ noted that Plaintiff's neurologic, psychiatric, and mental status exams were largely within normal limits; that the consultative examiner had opined that Plaintiff's persistence and pace were varied due to depression and PTSD; and that the state agency psychological consultants opined that Plaintiff's limitations in this functional area were no more than moderate (Tr. 81). As the Commissioner notes, both Drs. Bruno and DeCubas opined that Plaintiff could follow instructions and directions and was capable of performing semi-skilled work (Tr. 119; 133). Moreover, Plaintiff has failed to demonstrate he has additional limitations not already

included in the RFC.  Accordingly, I find that the ALJ properly evaluated all of the evidence and supported his RFC determination with substantial evidence.  *See* 20 C.F.R. §§ 404.1520c(a), 20 C.F.R. § 404.1546(c).

### B. *Apparent conflict*

Plaintiff next asserts that the ALJ erred by failing to resolve an apparent conflict between the VE's testimony and the information contained in the Dictionary of Occupational Titles in violation of SSR 00-4p.  Plaintiff contends that because he is restricted to "two-step tasks," he is unable to perform the three jobs identified by the VE that require a reasoning level of two, and thus, the ability to carry out more than "two-step tasks."  While Plaintiff's contention that an individual restricted to "two-step tasks" would be unable to perform jobs that require a reasoning level of two is correct, the ALJ here did not include a limitation to "two step tasks" in the RFC.  Instead, the ALJ concluded that the evidence supported an RFC with the limitation to "perform work which needs little or no judgment to do simple duties that can be learned on the job in a short time (up to and including 30 days)" (Tr. 82).

The ALJ is tasked with posing a hypothetical to the VE that reflects Plaintiff's impairments and functional limitations supported by substantial evidence.  *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002).  As the Commissioner notes, SSR 00-4p requires the ALJ to identify and resolve apparent conflicts between the VE's testimony and the DOT.  However, where there is no apparent conflict, the ALJ has no duty to inquire and may rely on the VE's testimony.  *See Washington v. Comm'r of Soc. Sec.,* 906 F.3d 1353 (11th Cir. 2018); 20 C.F.R. § 404.1566(e).  Accordingly, I find that the ALJ's RFC is supported by substantial evidence and that the ALJ did not need to resolve any apparent conflicts.

### C.  VA disability

Lastly, Plaintiff contends the ALJ erred by failing to properly consider his VA 100% service-connected disability rating.  Plaintiff acknowledges that the revised regulation applies to his application.  Under the new regulation, the ALJ need not "provide any analysis" about the VA decision but will "consider all of the supporting evidence underlying the [VA's] decision" to the extent that such evidence is in the record.  20 C.F.R. § 404.1504.  Recently, another judge in this district recognized the new regulation "is a significant departure from earlier legal authority holding that a VA disability rating is ordinarily entitled to 'great weight.'"  *Martinez v. Kijakazi*, No. 8:20-cv-1807-TGW, 2022 WL 2307077, at *3 (M.D. Fla. March 29, 2022) (dismissing as "frivolous" the claimant's argument that the new regulation does not supersede Eleventh Circuit precedent requiring the law judge to consider VA decisions).

Here, the ALJ discussed the VA medical records underlying the VA disability determination (Tr. 84-85).  Thus, I find that he complied with the revised regulation and did not err by failing to discuss the VA disability rating.  As the Commissioner indicates, Plaintiff's reliance on *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317 (11th Cir. 2020) is misplaced (Doc. 17 at 16-17).  *Noble* concerned an application filed before March 27, 2017, and thus, the revised regulations did not apply.  *See Noble*, 963 F.3d at 1324 (recognizing that "under the new regulation the ALJ no longer analyzes the other agency's decision"); *Martinez v. Kijakazi,* 2022 WL 2307077, at *3 (finding *Noble* "inappositive because the claim in that case preceded the applicability of the new regulation").

### D.    Conclusion

For the reasons stated above, it is ORDERED:

13

(1) The ALJ's decision is AFFIRMED; and

(2) The Clerk of Court is directed to enter judgment for Defendant and close

the case.

DONE and ORDERED in Tampa, Florida on August 19, 2022.

*Mark A. Pizzo*

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE